UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LOCAL 377, RWDSU, UFCW,                         :
                                                :
                          Plaintiff,            :
                                                :
              v.                                :
                                                :          **OPINION**
1864 TENANTS ASSOCIATION                        :
                                                :          06 Civ. 1190 (LBS)
                          Defendant.            :
----------------------------------------------------------------x

Appearances:

*For Plaintiff:*
Netanel Newberger and Julie Pearlman Schatz
Law Offices of Richard M. Greenspan, P.C.
Parkway Plaza II
Elmsford, NY 10523

*For Defendant:*
Scott Browning Gilly
Thompson Wigdor & Gilly LLP
350 Fifth Avenue
New York, NY 10118

SAND, J.

      Plaintiff, Local 377, RWDSU, UFCW, a union representing a residential superintendent,

commenced this action under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.

§ 185 (2000) to confirm an arbitration award against defendant, 1862-66 Third Avenue HDFC,

Inc.,[1] his employer.  Before the Court are plaintiff's motion for summary judgment and

defendant's motion for judgment on the pleadings.

---

[1] Defendant 1862-66 Third Avenue HDFC, Inc. is incorrectly identified in the caption as 1864 Tenants Association.

I

The facts are not in dispute.  Defendant employer voluntarily entered into a collective bargaining agreement that plaintiff union negotiated on behalf of a single residential superintendent.[2]  By its terms, the collective bargaining agreement covered the period from June 1, 2001 to May 31, 2004.  The agreement provided that at its expiration, the parties would meet to renegotiate a new agreement and that if they were unable to agree on new contract terms, the dispute should be submitted to binding interest arbitration.  Upon the expiration of the agreement, a dispute arose and the parties were unable to agree on a new collective bargaining agreement to cover the superintendent.  The union submitted the dispute for arbitration before the New York State Employment Relations Board.  The employer, though it had adequate notice, did not participate in the arbitration in any way and did not appear at the scheduled hearing on October 11, 2005.  On October 24, 2005, the arbitrator issued a written award imposing on the employer the terms of a new collective bargaining agreement covering the superintendent.  The employer has refused to comply with the award.  Plaintiff petitioned this Court to confirm the award.

II

Both parties agree that the central issue is whether an interest arbitration clause in a collective bargaining agreement covering only a single employee is enforceable.  The employer argues that the collective bargaining agreement, and therefore the arbitration clause, is invalid under the "single-employee unit rule."  The union contends that despite the National Labor

---

[2] The union never sought certification with the National Labor Relations Board (NLRB) under § 9(c) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(c).  In the first paragraph of the collective bargaining agreement, the employer explicitly recognized the union as the exclusive representative for collective bargaining for all present and future employees.  (Compl., Ex. A ¶ 1.)

Relations Board's (NLRB) unwillingness to certify single-employee units, the collective bargaining agreement is a valid contract and, even if unenforceable under federal law, is enforceable under New York state statutory and common law.

### A. *Jurisdiction*

Though the parties do not contest the Court's subject matter jurisdiction, we note preliminarily that the Court has jurisdiction under § 301 of the LMRA. Section 301(a) gives the federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185. While the NLRB will not exercise jurisdiction over representational disputes involving bargaining units with less than two employees, see, e.g., Stack Electric, 290 N.L.R.B. 575, 577 (1988), courts in the Ninth and Seventh Circuits have held that the district courts have jurisdiction over § 301 actions even where the contract involved covers only a single employee. General Teamsters Union Local No. 174 v. Trick & Murray, Inc., 828 F.2d 1418, 1420 (9th Cir. 1987); Motion Picture Projectionists & Video Technicians, Local 110 v. Fred Corp., 845 F. Supp. 1255, 1257-58 (N.D. Ill. 1994). Like these courts, we note that the jurisdiction of the district courts is independent from the jurisdiction of the NLRB, and read the broad grant of jurisdiction in § 301 to include suits on contracts covering a single employee.

It is well established that federal courts have jurisdiction under § 301 to review labor arbitration awards as arbitration is a matter of contract. Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

### B. Preemption

The union argues that, federal law notwithstanding, collective bargaining agreements covering a single-employee unit are enforceable as a matter of New York law.  The union points to In re New York State Labor Relations Board v. Metropolitan Life Insurance Company, 52 N.Y.S.2d 590, 593 (N.Y. Sup. Ct. 1944), where a New York court held that, at least in some circumstances, an employer could be compelled to bargain with a union representing single-employee units under the New York State Labor Relations Act, Labor Law § 700.  Further, the union argues that the collective bargaining agreement is enforceable as a matter of state contract law.

The union argues that under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), state law is not preempted because entering a collective bargaining agreement covering a single-employee unit is neither prohibited nor protected by the National Labor Relations Act (NLRA).  We need not, however, reach the question of Garmon preemption in this case.  State law is clearly preempted by § 301.[3]

The Supreme Court has made clear that, in addition to granting jurisdiction to the federal courts, § 301 creates a body of substantive federal common law governing the interpretation of labor agreements.  See Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57 (1957).  Section 301 preempts state law for claims arising out of a contract between an employer and a labor organization.  See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983); Lucas Flour, 369 U.S. at 103-04.

---

[3] Metropolitan Life predated the enactment of § 301 by three years, therefore it is unsurprising that the New York courts have not revisited the issue.

The dispute in this case is over a right created only by a contract between a union and an employer—the right to enforce an arbitration award. Section 301 preempts state statutory and contract law and the Court must look to federal common law to determine the validity of the arbitration provision of the collective bargaining agreement. The union's arguments under state law are inapposite.

III

Having determined that state law is preempted, we turn now to federal law. The employer argues that it is not bound by the interest arbitration clause because the collective bargaining agreement was void under the "single-employee unit rule." The NLRB has long held that it is not an unfair labor practice for an employer to refuse to bargain with a union representing a single-employee unit. Nor does it violate the statutory duty to bargain under § 8(a)(5) for an employer to repudiate a collective bargaining agreement covering only a single-employee unit. The employer contends that this Court should go one step further and hold that such a collective bargaining agreement is void and unenforceable as a matter of contract law. This is a matter of first impression for this Court, though courts in the Seventh and Ninth Circuits have weighed in on the issue.

A.  *The Single-Employee Unit Rule in the NLRB*

The single-employee unit rule has its roots in a certification decision by the NLRB. The NLRA creates a duty for an employer to bargain collectively with the representative selected by a majority of its employees. See NLRA §§ 8(a)(5), (b)(3), 29 U.S.C. §§ 158(a)(5), (b)(3). The NLRA also provides for a certification process by which the NLRB will certify a labor

5

organization as the exclusive representative for an appropriate unit of employees.  See NLRA § 9, 29 U.S.C. § 159.  In Luckenbach Steamship Co., 2 N.L.R.B. 181, 193 (1936), however, the NLRB made it clear that it will not certify a union representing a one-person bargaining unit under § 9(c).  The Board explained that "the principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain.  The Act therefore does not empower the Board to certify where only one employee is involved."  Id.  The NLRB went on to limit its holding to the question of certification, stating:  "This conclusion does not mean that a single employee may not designate a representative to act for him; he had such a right without the Act, and the Act in no way limits that right.  By the same token, this conclusion in no way limits the protection which the Act otherwise gives such an employee."  Id.

In Foreign Car Center, Inc., 129 N.L.R.B. 319 (1960), the NLRB expanded the single-employee unit rule first stated in Luckenbach.  The employer in Foreign Car repudiated in midterm a collective bargaining agreement covering a single mechanic.  Id. at 319-20.  The mechanic's union complained that the repudiation and subsequent refusal to negotiate with the union was an unfair labor practice.  The NLRB held that an employer's refusal to bargain with a representative of a single-employee unit does not violate the statutory duty to bargain under § 8(a)(5).  Id. at 320.  The employer's repudiation of the contract was not an unfair labor practice under the NLRA.  As in Luckenbach, the NLRB was careful to limit its holding to the power of the NLRB to compel an employer to bargain with a single-employee unit.  Id.  Citing an earlier NLRB case, Louis Rosenberg Inc., 122 N.L.R.B. 1450 (1959), the Board stated that "the Act does not preclude bargaining with a union on behalf of a single employee, if an employer is willing."  Foreign Car, 129 N.L.R.B. at 320.

In <u>Louis Rosenberg</u>, the NLRB held that even though the Board will not certify a single-employee unit, such a unit is not inherently inappropriate under § 9(a) and a single employee may, without violating the NLRA, designate a union to bargain on his behalf with the employer. 122 N.L.R.B. at 1453. In that case the employer had entered into a union security contract with a union representing a single chauffer. <u>See</u> <u>id.</u> at 1463. The Board held that the contract covering the chauffer did not violate the NLRA and was a valid collective bargaining agreement. <u>Id.</u> at 1453, 1464.[4]

These three cases make it clear that the NLRA does not compel an employer to bargain with a union on behalf of a single employee and that the NLRB will not affirmatively assist a single-employee unit through certification or action against an employer who refuses to bargain. At the same time, the cases also show that nothing in the NLRA prevents an employer from bargaining with a union representing a single employee or from voluntarily entering a collective bargaining agreement covering a single-employee unit. While <u>Foreign Car</u> makes it clear that an employer who repudiates a collective bargaining agreement covering a single-employee unit does not commit an unfair labor practice under the NLRA, the case says nothing about the union's ability to sue in federal court under § 301 for breach of contract. <u>Louis Rosenberg</u> implies that a collective bargaining agreement covering a single-employee unit is a valid contract that would be enforceable under § 301.

Later NLRB cases have followed the holding in <u>Foreign Car</u> that an employer's repudiation of a collective bargaining agreement is not an unfair labor practice under the NLRA,

---

[4] Two members of the Board dissented on the grounds that under the plain meaning of the statute, a single employee cannot constitute an appropriate unit for collective bargaining under § 9(a) because the statute refers to "employees" and therefore a collective bargaining agreement covering a single employee would be void for lack of an indispensable party. <u>Louis Rosenberg</u>, 122 N.L.R.B. at 1455-56. The majority expressly rejected this interpretation, holding that "[i]t is a basic rule of statutory construction that the plural includes the singular unless the context indicates otherwise." <u>Id.</u> at 1453.

but the language of these cases has grown expansive to the effect of implying that that an employer has a *right* to repudiate such an agreement.  See, e.g., Haas Garage Door Co., 308 N.L.R.B. 1186 (1992) ("[The single-employee unit] rule provides that when a unit consists of no more than a single permanent employee at all material times, an employer has no statutory duty to bargain and thus, will not be found in violation of the Act for disavowing a bargaining agreement or refusing to bargain."); D&B Masonry, 275 N.L.R.B. 1403, 1408 (1985) ("It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording the union an opportunity to bargain."); see also Stack Electric, Inc., 290 N.L.R.B. 575 (1988) (same).  This language, of course, is dicta as the enforceability of these collective bargaining agreements was not before the NLRB.  No NLRB case has squarely addressed the limiting language in Foreign Car and Luckenbach, and no case has rejected Louis Rosenberg's holding that a single-employee unit is not inherently inappropriate and that a contract covering such a unit does not violate the NLRA.

Of all of the NLRB cases, Sunray Ltd., 258 N.L.R.B. 517 (1981) provides the most support for the employer's contention that a collective bargaining agreement covering a single-employee unit is void.  In Sunray, the employer, a construction subcontractor, entered into a § 8(f) pre-hire collective bargaining agreement[5] with a union, Local 12, covering employees performing work over which the union had jurisdiction.  Id. at 517.  At the time of the

---

[5] Section 8(f) allows employers in the construction industry to form collective bargaining agreements with unions even if the union does not represent the majority of the employer's employees.  But § 8(f) does not give the union all of the rights of an "exclusive representative" that it would have under § 9(a).  See John Deklewa & Sons, 282 N.L.R.B. 1375 (1987), enforced sub nom., Iron Workers Local 3 v. NLRB, 843 F.2d 770 (3d Cir. 1988), cert. denied, 488 U.S. 889 (1988).  A union that initially enters a § 8(f) pre-hire agreement can achieve § 9(a) status by showing that it has the support of a majority of the employees through an NLRB certification election or voluntary recognition by the employer.  See id.

agreement, the employer had only a single employee, who promptly joined the union.  Later the employer's workforce increased to five employees and the employer petitioned the NLRB under § 9(c) to hold an election to determine whether Local 12 or a competing union, Local 1184, represented a majority of the employees in the relevant unit and was therefore entitled to be the exclusive bargaining representative.  Id.  Local 12 argued that its preexisting collective bargaining agreement barred the election petition because it had achieved status as the majority representative when the sole employee joined the union, thereby converting its § 8(f) pre-hire relationship with the employer into a § 9(a) relationship.[6]  The Board held that Local 12's collective bargaining agreement covering the single employee did not bar the election petition.  Id. at 518.  The Board reasoned that because it would not certify a single-employee unit as appropriate in a representation proceeding, the mere fact that the sole employee joined Local 12 did not make the union the chosen representative of the majority of the employees for the purposes of § 9(a).  Id.

The NLRB stated, in dicta (and without citation), that "the Board will not enforce a contract covering a single-person unit."  Id.  But § 301 places the primary responsibility for enforcing collective bargaining agreements on the federal courts, not the NLRB.  See Pari Mutuel Clerks Union v. Fair Grounds Corp., 703 F.2d 913, 917-918 (5th Cir.) ("The LMRA establishes two primary mechanisms for promoting the goal of industrial stability:  private enforcement of collective bargaining agreements through section 301 and government sanctions

---

[6] A preexisting valid collective bargaining agreement between a union and an employer will generally bar any petition to the NLRB to redetermine representatives through an election.  NLRB v. Libbey-Owens-Ford Glass Co., 241 F.2d 831, 836 (4th Cir. 1957).  A § 8(f) pre-hire agreement, however, does not bar the employer from petitioning the NLRB to challenge the union's majority status under § 9(c) or (e), see NLRA § 8(f), 29 U.S.C. § 158(f), and does not bar an election unless and until the union establishes its status as an exclusive representative of the majority of the employees under § 9(a).  See Deklewa, 282 N.L.R.B. 1375.  Sunray predated Deklewa and was decided under the old "conversion" rule allowing unions to convert from § 8(f) status to § 9(a) status upon a showing of majority status that fell short of an NLRB supervised election or voluntary recognition.  This approach has since been abandoned.  See id.

for unfair labor practices through the NLRB."), <u>cert. denied</u>, 464 U.S. 846 (1983).  The Board

was not asked to determine any rights under the terms of the collective bargaining agreement.

Moreover, the NLRB made no attempt to distinguish or overturn the much more limited

approach of <u>Foreign Car</u>, <u>Luckenbach</u>, and <u>Louis Rosenberg</u>.  At its core <u>Sunray</u> remains a

decision about a certification petition.  The Board showed its concern for employee

representation when it noted that "the unit is now five times the size it was when the 1978

contract was executed and, as the Union has never enjoyed majority status in the larger unit

found appropriate here, we would not hold such a contract to be a bar to an election petition."

<u>Sunray</u>, 258 N.L.R.B. at 518.  <u>Sunray</u> should be read as a commitment to the principle that a

union cannot attempt to entrench itself as the exclusive bargaining representative for a group of

employees simply because it represented the first employee in a growing unit.  <u>Cf.</u> <u>General

Extrusion Co.</u>, 121 N.L.R.B. 1165, 1167 (1958) (holding that a collective bargaining agreement

will not bar an election petition if it is executed prior to a substantial increase in personnel).


### B.  Courts' Application of the Single-Employee Unit Rule

While neither the Second Circuit nor this Court has considered the applicability of the

single-employee unit rule in § 301 actions, several courts in other circuits have seized on the

NLRB's broad language and interpreted its holdings that repudiating a collective bargaining

agreement covering a single-employee unit is not an unfair labor practice to mean that such an

agreement is unenforceable and the employer may repudiate it at any time without being liable

for breach of contract.

The Ninth Circuit considered the single-employee unit rule in <u>Laborers Health & Welfare

Trust Fund v. Westlake Development</u>, 53 F.3d 979 (9th Cir. 1995).  There the union and

employer entered into a § 8(f) pre-hire collective bargaining agreement which, in addition to setting wages and terms of employment, required the employer to make fringe benefit contributions to the Trust Fund on behalf of employees and contained an arbitration clause.  Id. at 981.  After making contributions as required for 23 years, the employer notified that union that it considered the collective bargaining agreement unenforceable because it had employed only a single covered employee for the last three years and had no plans to hire more employees in the future.  Id.  The union brought an action under § 301 to recover damages for fringe benefit contributions due after the employer's unilateral repudiation of the contract and to confirm an arbitration award stemming from the employer's use of nonunion employees after the repudiation.  Id.

The Ninth Circuit held that the employer's unilateral repudiation of the collective bargaining agreement was lawful under the single-employee unit rule.  Id. at 982-83.  The court relied on the expansive language in some of the later NLRB cases, which the court observed, "speak not only in terms of the standard application of the one-employee unit rule (where there is no statutory obligation to bargain in a representation proceeding), but also directly in terms of lawful unilateral repudiation of section 8(f) agreements where there is a single (or no) employee unit."  Id. at 983.  The court reasoned that because the single-employee unit rule "essentially dissolves the bargaining unit" because the NLRB will not certify such a unit, "it seems appropriate to treat repudiation under the single-employee unit rule as equivalent to a repudiation resulting from decertification of the bargaining representative."  Id. at 982.  The court held that once the employer had provided the union with actual notice of the repudiation, the agreement was void.  Id. at 984.  Therefore the union could not recover the fringe benefits contributions on a breach of contract theory and there was no contractual basis for arbitration.  Id.

The Seventh Circuit adopted a similar view in J.W. Peters, Inc. v. Bridge Structural & Reinforcing Ironworkers, 398 F.3d 967 (7th 2005), holding that where an employer employs "fewer than two employees during the relevant period, the company's unilateral repudiation of the contract would, as a matter of law, relieve it of its contractual obligations to arbitrate." Id. at 975. There the employer sent a letter to the union purporting to repudiate a § 8(f) pre-hire agreement because it had not employed any ironworkers in the relevant unit for more than two years. Id. at 970. The union commenced arbitration and the employer filed an action under § 301 to stay the arbitration and for a declaratory judgment that the collective bargaining agreement was no longer in effect. Id. at 970-71. The employer also petitioned the NLRB for a representation hearing to determine the union's majority status, but the Board dismissed the petition, finding representation proceedings unwarranted because there were no employees employed in the relevant unit. Id. at 971.

Citing the Supreme Court's decision in Jim McNeff, Inc. v. Todd, 461 U.S. 260 (1983), the union argued that there was a "critical distinction" between the statutory duty to bargain under § 8(a)(5) and the employer's contractual obligations under the collective bargaining agreement. J.W. Peters, 398 F.3d at 975. The Seventh Circuit, however, explicitly rejected the contention that the NLRB cases stand for the limited proposition that the single-employee unit rule applies only the statutory duty to bargain, not to the validity of contractual obligations under a collective bargaining agreement. Id. at 974. Like the court in Laborers Health & Welfare, the Seventh Circuit relied on the expansive language in the later NLRB cases. Id. ("[T]he Board's decisions explicitly allow an employer, more generally, to repudiate a pre-hire agreement and discontinue its duties under the agreement when it employs no more than one employee in the relevant unit.") (citing Sunray, 258 N.L.R.B. at 518). But the court also considered the NLRB's

rejection of the representation petition, finding it "illogical" to continue to bind the employer to a pre-hire agreement simply because it had no employees who could reject the union in a Board-conducted election.  Id. at 975.

Federal district courts considering the single-employee unit rule generally have ruled consistently with Laborers Health & Welfare and J.W. Peters.  In Chicago Truck Drivers v. Pratt & Lambert, Inc., No. 89 C 5657, 1989 WL 157270 (N.D. Ill. Dec. 18, 1989), the employer repudiated a collective bargaining agreement midterm and refused to engage in arbitration as provided in the agreement, claiming that it was no longer binding because the number of employees in the covered unit fell to one.  The district court dismissed the union's action under § 301 to enforce the contract because the premise of a collective bargaining agreement is that it covers a "collective," i.e., more than one employee.  Id. at *3.  When that premise is absent, the court reasoned, "a fundamental premise of the bargain on which the contract is based no longer applies, and therefore…the employer may repudiate the contract….and may not be made to comply with its terms."  Id.

In Motion Picture Projectionists v. Fred Corp., 845 F. Supp. 1255 (N.D. Ill. 1994), the district court dismissed a suit under § 301 for violation of a collective bargaining agreement because the covered unit consisted of only a single permanent employee.  Relying on the expansive language in the NLRB cases the court held that the employer's repudiation was valid even though the employer had clearly breached the terms of the agreement.  Id. at 1259.  In Whiting-Turner Contracting Co. v. Local Union No. 7, 15 F. Supp. 2d 162 (D. Mass. 1998), a district court in Massachusetts relied on Laborers Health & Welfare to hold that an employer was entitled to repudiate a thirty-year-old, self-renewing § 8(f) pre-hire agreement when there had been no employees in the unit for over ten years.  Id. at 164.  The court held that because the

agreement was repudiated, there was no contractual basis for arbitration of any disputes arising after the repudiation.  Id. at 166.

Most recently, in M.R.S. Enterprises, Inc. v. Sheet Metal Workers' International Ass'n, 429 F. Supp. 2d 72 (D.D.C. 2006), the D.C. district court discussed the single-employee unit rule in a § 301 action to confirm an arbitration award stemming from a §8(f) pre-hire agreement.  The employer lost in arbitration, but claimed that the arbitration award was moot because it had previously repudiated the collective bargaining agreement when it notified the union that it no longer employed any sheet metal workers.  Id. at 76.  In dicta, the court noted that there is an exception to the general rule that an employer cannot unilaterally terminate a collective bargaining agreement where the bargaining unit is reduced to one employee or fewer.  Id. at 81 (citing Laborers Health & Welfare, 53 F.3d at 982).  The court explained that the "rationale for this exception is that when the work force is reduced to one or fewer employees, the bargaining unit is dissolved and the union can no longer hold majority status."  Id.  The court went on to find, however, that the employer had not met its burden of showing that it employed one or fewer sheet metal workers and therefore the single-employee unit rule was inapplicable.  Id. at 81-82.

### C.  Rationales for the Single-Employee Unit Rule

In extending the NLRB's limited single-employee unit rule to mean that an employer may freely repudiate a collective bargaining agreement covering a single-employee unit without liability for breach of contract, courts have relied on four main rationales.  Ultimately the Court finds none of them persuasive in this case.

*1. Plain Meaning*

The plain meaning of the NLRA underlies the NLRB's original decisions in <u>Luckenbach</u> and <u>Foreign Car</u> where the Board explained that by its very nature, *collective* bargaining presupposes that there is more than one employee who wises to bargain and therefore the statute does not permit the Board to certify a single-employee unit or to compel an employer to bargain with one.  <u>See</u> <u>Luckenbach</u>, 2 N.L.R.B. at 193; <u>Foreign Car</u>, 129 N.L.R.B. at 320.  But the NLRB was very careful to limit the reach of its holding to cases where a single-employee unit was asserting rights created by the NLRA for a collective.  The Board stressed that the Act does not limit the preexisting right of a single employee to designate a representative to bargain on his behalf, <u>Luckenbach</u>, 2 N.L.R.B. at 193, nor does it limit the ability of that representative to bargain with an employer who is willing to bargain, <u>Foreign Car</u>, 129 N.L.R.B. at 320, or even to enter a collective bargaining agreement with a willing employer, <u>Louis Rosenberg</u>, 122 N.L.R.B. at 1453.

The court in <u>J.W. Peters</u> found textual support for expanding the single-employee unit rule in § 9(a) which defines "exclusive representatives."  The section provides:  "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such a unit for the purposes of collective bargaining…."  29 U.S.C. § 159(a).  The court emphasized Congress's use of the words "*majority*" and "*employees*" to show that more than one employee was required to make a collective bargaining agreement valid.  <u>J.W. Peters</u>, 398 F.3d at 975.  This interpretation, however, was flatly rejected by the NLRB in <u>Louis Rosenberg</u>.  There, in construing the same section, the Board followed the "basic rule of statutory construction that the plural includes the singular unless the context indicates

otherwise," and held that a single-employee unit was appropriate under § 9(a).  <u>Louis Rosenberg</u>,

122 N.L.R.B. at 1453; <u>see</u> <u>supra</u> note 4.

In short, nothing in the plain meaning of the NLRA says that a collective bargaining

agreement coving a single-employee unit is not an enforceable contract.

### 2.  *Premise of Contract is a Collective of Employees*

The court in <u>Chicago Truck Drivers</u> justified its application of the single-employee unit

rule by saying that it is a "fundamental premise" of a collective bargaining agreement that it

cover more than one employee and when that premise no longer applies, the contract is

unenforceable.  1989 WL 157270 at *3.  The court made no attempt to couch this reasoning in

typical contract law terms of mistake or impossibility, but even if we assume that a

"fundamental" change in circumstances would allow a party to legitimately repudiate the

contract, such reasoning would have little force in this case.  Here both the employer and the

union were fully aware that there was only one employee in the unit at the time that the

collective bargaining agreement was executed (and nothing in the record indicates that additional

employees were foreseen).  This is not a case where the union and the employer negotiated a

collective bargaining agreement covering a larger unit that was later reduced to a single

employee.  The reasoning in <u>Chicago Truck Drivers</u>, even if it is valid, is inapposite.

### 3.  *Inability of Single Employees to Hold Majority Status*

The court in <u>M.R.S. Enterprises</u> said that the rationale for allowing an employer to

repudiate a collective bargaining agreement that covers only a single-employee unit is that a

union cannot hold majority status when there is only one employee.  429 F. Supp. 2d at 81.  If a

union does not have majority status, it cannot be the exclusive bargaining representative under §
9(a) and therefore would have no power to enter into a binding collective bargaining agreement
with the employer.[7]  See International Ladies' Garment Workers Union v. NLRB, 366 U.S. 731,
736-38 (1961).  The rationale in M.R.S. Enterprises appears to be undermined by the holding in
Louis Rosenberg that there is nothing inherently inappropriate about a union bargaining on
behalf of a single-employee unit.  In fact, adopting the reading of "majority" in M.R.S.
Enterprises would require rejecting the NLRB's reading of § 9(a) in Louis Rosenberg, 122
N.L.R.B. at 1453.  See also supra note 4.  Moreover, it seems illogical to say that a union cannot
attain majority status when there is only one employee when it usually will be the case, as it is
here, that the union representing a single employee enjoys *unanimous* support.


*4.  NLRB's Unwillingness to Certify Should be Treated the Same as Decertification*

The Ninth Circuit, in Laborers Health & Welfare, reasoned that because the NLRB will
not act on behalf of a single-employee unit (to certify or find unfair labor practices), the single-
employee unit rule essentially dissolves the bargaining unit.  53 F.3d at 982.  Therefore a
collective bargaining agreement covering such a unit should be treated the same as an agreement
where the bargaining representative had been decertified—the agreement would be
unenforceable.  Id.  This appears to be a misreading of the NLRB cases on the single-employee
unit rule.  Louis Rosenberg made clear that a single-employee unit was not inherently
inappropriate under § 9(a), despite the NLRB's unwillingness to certify a bargaining
representative for such a unit.  122 N.L.R.B. at 1453.  Nothing in Foreign Car or the later NLRB
cases contradicts this holding.

---

[7] Of course, under § 8(f) a union in the construction industry may enter a pre-hire collective bargaining agreement
before it has established majority status.  Because M.R.S. involved a § 8(f) agreement, the rationale of its dicta
appears to be further undermined.

Part of the difficulty with <u>Laborers Health & Welfare</u> is that the case stems from a § 8(f) pre-hire agreement.  Section 8(f) allows employers and unions in the construction industry to enter collective bargaining agreements without first establishing the majority status of the union.  Prior to the NLRB's holding in <u>John Deklewa & Sons</u>, 282 N.L.R.B. 1375 (1987), <u>enforced sub nom.</u>, <u>Iron Workers Local 3 v. NLRB</u>, 843 F.2d 770 (3d Cir. 1988), <u>cert. denied</u>, 488 U.S. 889 (1988), an employer could freely and unilaterally repudiate a pre-hire agreement until the union established that it had the support of the majority of employees in the unit, thereby converting the union from § 8(f) status to § 9(a) status.  <u>See</u> <u>Whiting-Turner</u>, 15 F. Supp. 2d at 164.  In <u>Deklewa</u>, the NLRB abandoned this approach, holding that pre-hire agreements are enforceable and that employers could not repudiate them without showing, in a Board-conducted decertification election, that the union lacked majority support.  282 N.L.R.B. at 1385 .  This presents a difficulty for a single employee covered by a § 8(f) agreement who wishes to be represented by a different union.[8]  The only way for the employee to escape the dictates of the pre-hire agreement and obtain representation by the union of his choice would be to file a petition with the NLRB to certify the replacement union as his exclusive bargaining representative.  But under the single-employee unit rule, the NLRB would not entertain such a petition.  <u>See</u> <u>Luckenbach</u>, 2 N.L.R.B. at 193.  The Ninth Circuit solved this quandary by holding that § 8(f) pre-hire agreements covering only a single employee are not enforceable.  Ultimately the Ninth Circuit's reasoning is rooted in a concern about representation and union entrenchment.

This concern is also evident in <u>J.W. Peters</u>, where the Seventh Circuit registered its unwillingness to continue to bind an employer to a pre-hire bargaining agreement simply

---

[8] This is not an unlikely scenario as § 8(f) allows employers in the construction industry to enter a collective bargaining agreement with a union even before they have any employees.

because it did not have any employees who could reject the union in a board conducted election. 398 F.3d at 975.  The Seventh Circuit was concerned with the union's ability to entrench itself through a pre-hire agreement that would prevent the employer from extricating itself even when it became clear that the union no longer enjoyed majority support because there were no employees in the unit.  Of course, on its facts, J.W. Peters is distinguishable from the instant case because the unit in this case has an employee who supports the union and who, if the employer filed a decertification petition, would have an opportunity to reject the union.

These representation and entrenchment concerns are not as strong outside the context of a § 8(f) pre-hire agreement.  Outside the construction industry, in order to form a valid collective bargaining agreement, the union must have majority support within the bargaining unit at the time the contract is executed.  See International Ladies', 366 U.S. at 736-38.  This is true even when an employer voluntarily recognizes a union.  Id.  Therefore there is much less cause for concern that a union which never had majority support could entrench itself through a collective bargaining agreement covering only a single employee.

Representation concerns remain where a single-employee unit grows and a majority of the new employees do not want the same union to represent them, but are barred from filing a representation petition by a collective bargaining agreement that was negotiated on behalf of the first employee.  This was the NLRB's concern in Sunray.  This problem, however, is not limited to single-employee units.  Whenever any bargaining unit grows, a new majority may favor a different union or none at all.  But the NLRB has dealt with this problem generally, see, e.g., General Extrusion Co., 121 N.L.R.B. 1165, 1167 (1958) (holding that a collective bargaining agreement will not bar an election petition if it is executed prior to a substantial increase in personnel), and more specifically with regard to single-employee units in Sunray, 258 N.L.R.B.

19

at 518 (holding that a § 8(f) collective bargaining agreement covering a single-employee unit will not bar an election petition after the unit has grown).

The representation concerns that appear to underlie the decisions in <u>Laborers Health & Welfare</u> and <u>J.W. Peters</u> are not present in this case.  Here, there is no dispute that bargaining unit at all times consisted of a single employee who supported the union as his representative. The employer voluntarily entered the collective bargaining agreement with the union recognizing that it covered a single employee who supported the union.  The Court does not see how the representational rights of that employee could be furthered by granting the employer the right to unilaterally repudiate the agreement with the union that the employee chose.  Moreover the Court finds unpersuasive the Ninth and Seventh Circuits' interpretations of the reach of the single-employee unit rule under NLRB caselaw.

### D.  Collective Bargaining Agreements Covering Single-Employee Units are Valid Contracts Enforceable Under § 301

As discussed above, nothing in the plain meaning of the NLRA indicates that a collective bargaining agreement covering a single-employee unit is not an enforceable contract.  Nothing in the NLRB's holdings that it will not certify a representative of a single-employee unit, compel an employer to bargain with such a representative, or find a statutory violation of the duty to bargain when an employer repudiates a collective bargaining agreement covering such a unit addresses the contractual obligations of an employer when it voluntarily enters an agreement covering such a unit.  And the Court finds unpersuasive the rationales that other courts have used to extend the NLRB's limited single-employee unit rule to mean that employers may freely repudiate collective bargaining agreements without incurring liability for breach of contract.  We

therefore hold that where an employer voluntarily enters a collective bargaining agreement covering a single-employee unit, such an agreement imposes binding contractual duties on the parties that may be enforced in a suit under § 301, even if the employer's breach or repudiation of the contract would not constitute a violation of the statutory duty to bargain under § 8(a)(5).

The Court notes, as did the Supreme Court in McNeff Inc. v. Todd, 461 U.S. 260, 267 (1983), that there is a "critical distinction" between an employer's statutory duty to bargain under § 8(a)(5) and an employer's contractual obligations under a collective bargaining agreement.  Cf. Local Union 257, IBEW v. Sebastian Electric, 121 F.3d 1180, 1185 (8th Cir. 1997) ("The fact that the employer may have had no statutory duty to bargain" because the union had not attained majority status "did not eliminate [the employer's] contractual obligations" under a § 8(f) pre-hire agreement to submit to interest arbitration.).  See generally 1 N. Peter Lareau, Labor & Employment Law § 12.04(6) (Matthew Bender 2006) ("[A]n employer is free to withdraw recognition from a union representing a bargaining unit that consists of a single employee….However, although the employer will be relieved of its statutory bargaining obligation, its obligations under any collective bargaining agreement covering the remaining employee may continue.").  Congress intended § 301 as "statutory recognition of the collective bargaining agreement as a valid, binding and enforceable contract…."  S. Rep. No. 105, 80th Cong., 1st Sess., 17 (1947), reprinted in 1 NLRB Leg. Hist. of the LMRA 1947, at 423 (1948). Courts have noted that the Congress established two distinct mechanisms "for promoting the goal of industrial stability:  private enforcement of collective bargaining agreements through section 301 and government sanctions for unfair labor practices through the NLRB."  Pari Mutuel Clerks Union v. Fair Grounds Corp., 703 F.2d 913, 917-918 (5th Cir.), cert. denied, 464 U.S. 846 (1983).  While it is true that traditional contract rules do not always rigidly apply to

collective bargaining agreements, courts must look to traditional state contract law, when it is not inconsistent with federal labor policy, to form the content of the federal common law governing labor agreements.  See, e.g., United Paperworkers Int'l Union v. Champion Int'l Corp., 908 F.2d 1252, 1256 (5th Cir. 1990) (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957)).  The focus in interpreting collective bargaining agreements under § 301, as it is in interpreting any contract, is on the intent of the parties; in this case, it is clear that the parties intended to be bound by the agreement.

In this case, the employer was not forced to enter a contract with the union by any statutory duty; rather the employer voluntarily entered the collective bargaining agreement knowing that it covered only a single employee.[9]  Such a contract would be a binding obligation in the absence of federal labor law—it is merely a case of an employee appointing an agent to negotiate terms and conditions of employment on his behalf and the employer voluntarily entering an agreement with the agent.  The NLRB made clear in Luckenbach that nothing in the NLRA limits the right of an employee to designate a representative to bargain on his behalf.  2 N.L.R.B. at 193 ("he had such a right before the Act and the Act in no way limits that right").  Foreign Car and Louis Rosenberg make clear that the NLRA does not prohibit an employer from voluntarily bargaining or entering a contract with a union representing a single employee.  The Court cannot see how the logical next step would be that such a contract, neither compelled nor prohibited by the NLRA, is unenforceable.  None of the traditional contract defenses like mistake, impossibility, or duress would apply simply because this contract covered only a single employee.

---

[9] This is not a case where the employer, motivated only by its statutory duty to bargain, entered a collective bargaining agreement with an NLRB-certified union representing the majority of employees in a large unit and later attempted to repudiate the agreement when the size of the unit was reduced to one or zero employees as in Chicago Truck Drivers, 1989 WL 157270 or Whiting-Turner, 15 F. Supp. 2d 162.  The Court need not reach the applicability of the single-employee unit rule in such a situation.

The employer voluntarily entered the collective bargaining agreement and, in the first paragraph of the agreement, voluntarily recognized the union as the exclusive bargaining agent of its single employee.  (Compl. Ex. A ¶ 1.)  The employer abided by the terms of the contract for three years and took advantage of the benefits of industrial stability and limitations on union action that a valid collective bargaining agreement provides.  Even if the Court were to question the enforceability of a collective bargaining agreement covering a single-employee unit, equitable estoppel may preclude the employer from asserting that the single-employee unit is inappropriate after voluntarily recognizing the union.  See Alpha Associates, 344 N.L.R.B. No. 95, 2005 NLRB LEXIS 256 at *7-8 (2005) (holding that employer is estopped from withdrawing earlier voluntary recognition of a union on the grounds that the union lacked majority support or that the bargaining unit was inappropriate at the time of recognition).  As we hold that the collective bargaining agreement was an enforceable contract, however, we need not reach the question of estoppel in this case.

IV

Having held that the collective bargaining agreement covering the single superintendent was an enforceable contract, we turn now to the arbitration award.  There is no dispute that the collective bargaining agreement contained an interest arbitration clause providing that if the parties are unable to agree to the terms of a new agreement the dispute will be submitted to binding arbitration.  Courts have generally held interest arbitration clauses enforceable.  See, e.g., Sheet Metal Workers, Local Union No. 24 v. Architectural Metal Works, Inc., 259 F.3d 418, 428-29 (6th Cir. 2001).

There is no dispute that the employer had notice of the arbitration hearing and failed to appear.  Moreover, the employer made no attempt to advise the arbitrator prior to the arbitration that it was questioning the arbitrator's authority, nor did it file a petition with the court to vacate the arbitration award.[10]  Cf. Int'l Brotherhood of Elec. Workers, Local Union 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101-03 (8th Cir. 2004) (noting that a party may be deemed to have waived substantive objections to an arbitrator's jurisdiction where it fails to notify the arbitrator of those objections or its refusal to participate in the arbitration and fails to timely file a petition to vacate the award in court; a party may not raise an objection to the arbitrator's authority for the first time as a defense to a motion to confirm an arbitration award) (citing Local Union No. 36, Sheet Metal Workers v. Atlas Air Conditioning, 926 F.2d 770, 771-72 (8th Cir. 1991)).  The arbitrator issued an award based on the authority delegated by the terms of the contract.  A court must confirm an arbitration award that "draws its essence from the collective bargaining agreement."  United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  If the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision."  Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 62 (2000) (internal quotation marks omitted).  Courts give even greater deference to an arbitrator's decision in interest arbitration than in grievance arbitration because the arbitrator is "fashioning new contractual obligations."  Architectural Metal Works, 259 F.3d at 429.

---

[10] In fact, the employer did not even raise the issue of contract validity under the single-employee unit rule in its answer to the union's action to confirm the arbitration award.  The first time the employer raised the issue was in its motion for judgment on the pleadings, filed one day before the union's motion for summary judgment was due, eight months after its answer and one year after the arbitration award was issued.

A union may not seek to use interest arbitration to impose a new interest arbitration clause as a term of the new agreement over the objection of the employer, see Sheet Metal Workers Int'l Ass'n, 227 N.L.R.B. 520, 520-21 (1976); Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, 288 F.3d 491, 505 (2002), vacated and remanded on other grounds, 538 U.S. 918, adhered to on reconsideration, 351 F.3d 43 (2003), but the record in this case does not indicate that the union attempted to insert such a clause.  As the arbitration award drew its essence from an enforceable collective bargaining agreement, it must be confirmed.

V

For the reasons stated above, the employer's motion for judgment on the pleadings is denied.  The union's motion for summary judgment confirming the arbitration award is granted. The defendant shall comply with the arbitration award dated October 24, 2005.

**SO ORDERED.**

Dated:  March 1, 2007
        New York, NY

_____
                U.S.D.J.

25